# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| JEREMY SHEPHARD, ET AL. | CIVIL ACTION NO. 18-1603 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| ST. PAUL FIRE AND MARINE INSURANCE CO. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Plaintiffs have sued St. Paul Fire and Marine Insurance Company ("St. Paul") for alleged fraudulent misrepresentations made in a previously litigated personal injury suit. In that suit, the Plaintiffs sued St. Paul and its insured, AIX Energy, Inc. ("AIX"). AIX declared bankruptcy before trial, and in order to lift the bankruptcy stay on the personal injury litigation, the parties agreed that any recovery against AIX would be limited to the amount of its insurance with St. Paul. The case proceeded to trial and a jury found damages in excess of the St. Paul policy limits attributable to AIX. In this suit, Plaintiffs claim that St. Paul hid the identity of another potentially liable party that was also insured by St. Paul. Thus, Plaintiffs allege that they have been damaged by St. Paul in the amount of the jury verdict upheld on appeal which exceeded the St. Paul policy limits for AIX.

Now before the Court is St. Paul's motion to dismiss Plaintiffs' second supplemental and amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in which St. Paul contends that Plaintiffs' claims must be dismissed for various reasons, including that the claims have prescribed. Record Document 37. Plaintiffs oppose the motion and St. Paul filed a reply.

Record Documents 41 and 46. For the reasons stated herein, this Court holds that Plaintiffs' claims are prescribed and St. Paul's motion [Record Document 37] is **GRANTED**.

I.  Background

The factual allegations contained in Plaintiffs' complaint are accepted as true and are as follows.[1] In June 2014, Plaintiffs filed suit against AIX Energy, Inc. ("AIX") for personal injuries caused by an oilfield explosion occurring in 2013. Record Document 1 at 2. Plaintiffs' petition in that suit alleged that "AIX owned and/ or operated the well" that exploded. Record Document 32 at 1. AIX's August 15, 2014 answer stated that "AIX Energy was the owner of the well. As written, the remaining allegations contained in Paragraph 5 are denied." *Id.* at 1-2. At that time, AIX's defense was provided by its insurer, St. Paul. Record Document 1 at 3. Plaintiffs amended their complaint to add a direct claim against St. Paul in March 2015 and the attorney engaged to represent AIX then began to represent St. Paul as well. *Id.* at 2-3. In October 2016, St. Paul answered Plaintiffs' petition and pleaded that "Defendant adopts, reiterates, reaffirms and reavers all prior responses, defenses, allegations, and assertions made in the pervious filings by then Assured, AIX ENERGY, INC." Record Document 32 at 2.

The parties also engaged in discovery during the suit. On August 1, 2014, before St. Paul was a named defendant, Plaintiffs propounded Interrogatory No. 15 which requested AIX to "identify the owner and/ or the custodian of the well on the date of the incident." Record Document 1 at 3. AIX objected to the form of the interrogatory, said it was unsure what "owner and/ or custodian" referred to, and directed Plaintiffs to Exhibits R through F,

---

[1] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).

which were thirty-six pages of drilling permits and regulatory filings that did not identify the owner of the well. *Id.* Plaintiffs also propounded Requests for Production "J" and "F." Request "J" sought "the contract under which defendant conducted operations at the well." *Id.* at 4. AIX objected to the request as vague and ambiguous and stated that other companies, not AIX, "conducted operations" at the well. *Id.* Request "F" asked that AIX "produce all documents evidencing ownership and/ or custody of the well." Record Document 32 at 2. AIX directed Plaintiffs to its answer to Interrogatory 15 and Exhibits R through F. *Id.*

After Plaintiffs propounded the aforementioned discovery, AIX filed for bankruptcy, which stayed the personal injury litigation. Record Document 32 at 3. To lift the stay, Plaintiffs reached an agreement with St. Paul and AIX that Plaintiffs would "only proceed as to collectible insurance of [AIX] with St. Paul." *Id.* Plaintiffs relied on the discovery responses when reaching this agreement. *Id.*

The personal injury suit proceeded to trial in December 2016 and Plaintiffs obtained a verdict in their favor. Record Document 32 at 3. The jury verdict exceeded the amount of St. Paul coverage attributable to AIX by over $10,000,000. Record Document 1 at 6. On January 18, 2017, St. Paul filed a post-trial motion seeking to avoid the jury verdict and have Plaintiffs' claims dismissed. Record Document 32 at 4. In this motion, St. Paul revealed for the first time that in June 2012 AIX had sold seventy-five percent of its ownership interest in the well to a third party, NextEra Energy Gas Producing, LLC ("NextEra") and produced an Assignment and Bill of Sale. *Id.* Plaintiffs do not explain how this revelation related to the post-trial motion. On March 6, 2017, St. Paul and AIX produced a Joint Operating Agreement ("JOA") between AIX and NextEra which designated AIX as the well "operator" at the time of the incident. *Id.*

The JOA required that NextEra be added as an additional insured on all of AIX's insurance policies and stated that NextEra agreed to assume seventy-five percent of AIX's liabilities "incurred in operations under" the JOA. Record Document 1 at 5-6. According to Plaintiffs, this agreement was responsive to their discovery requests and contradicted AIX's answer (and St. Paul's adoption of said answer) stating that AIX was the "owner" of the well. Record Document 32 at 4. Despite this, AIX and St. Paul, represented by the same attorney, failed to disclose the existence of NextEra and the JOA prior to trial. Record Document 32 at 3-5.

AIX and St. Paul suspensively appealed the trial court judgment to the Louisiana Court of Appeal for the Second Circuit. Plaintiffs' damages award was largely affirmed. Record Document 1 at 6. St. Paul then appealed to the Louisiana Supreme Court, which denied the writ on November 5, 2018. *Id.*

Here the Court must interrupt its discussion of Plaintiffs' allegations to correct a legal mischaracterization in those allegations.[2] Throughout their pleadings, Plaintiffs erroneously label the excess jury verdict as an "excess judgment." For example, in the original complaint Plaintiffs state:

> The ruling of the Louisiana Second Circuit resulted in plaintiffs obtaining a judgment of $21,719,309.81. Thus, Plaintiffs obtained *an excess judgment* of $10,754,309.81 above the St. Paul policies, plus interest and costs.

Record Document 1 at 6 (emphasis added). And again, "Plaintiffs now have *a final judgment* that exceeds St. Paul's policy limits by over $10,000,000." *Id.* (emphasis added).

---

[2] While a court must accept as true factual allegations in a complaint when ruling on a motion to dismiss, it should not accept as true legal conclusions. *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020).

Importantly, no party was cast in judgment by any court for any amount in excess of the St. Paul insurance limits attributable to AIX. Stated another way, neither the judgment of the trial court nor of the court of appeal gave the Plaintiffs any legal right to collect any amounts beyond the AIX insurance proceeds. *See Judgment*, *Black's Law Dictionary* (11th ed. 2019) (defining judgment as "[a] court's final determination of the rights and obligations of the parties in a case."). For example, the trial court's judgment states:

> IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Plaintiff Jeremy Shephard against Defendant AIX Energy, Inc., in the sum of SEVENTEEN MILLION, FORTY-THREE THOUSAND, FOUR HUNDRED AND TWENTY-SEVEN DOLLARS AND EIGHT CENTS ($17,043,427.08) plus legal interest, said Judgment being unenforceable against AIX Energy, Inc. pursuant to the ruling In [sic] the United States Bankruptcy Court for the Northern District of Texas Dallas Division In re: AIX ENERGY Chapter 11, Case No. 15-34245, and that Plaintiff's recovery from AIX Energy, Inc. is limited to AIX Energy, Inc.'s liability insurance proceeds as set forth below.

Record Document 41-4 at 3.[3] The court of appeal similarly limited the enforceability of any judgment to the St. Paul insurance policies attributable to AIX and likewise cites the bankruptcy court's order. *Shephard v. AIX Energy, Inc.*, 51,965 (La. App. 2 Cir. 5/23/18); 249 So. 3d 194, 218-19, *writ denied*, 2018-1266 (La. 11/5/18); 255 So. 3d 1050. This distinction between an excess jury verdict and an excess judgment is important to the discussion below.

---

[3] "When reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on a Rule 12(b)(6) motion to dismiss, in particular, documents incorporated into the complaint by reference, and matter of which a court may take judicial notice.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 US. 308, 322 (2007)). A court may take judicial notice of a state court record. *Luv n' care, Ltd. v. Jackel Int'l Ltd.*, No. 3:18-CV-00534, 2020 WL 6878344, at *1 (W.D. La. Nov. 23, 2020) (discussing the ways a court may properly take judicial notice of the records of another court).

Returning to the Plaintiffs' allegations, Plaintiffs contend that because of the agreement reached to lift the bankruptcy stay, they were damaged in the amount of the excess jury verdict of $10,754,309.81. Record Documents 1 at 6 and 32 at 6. They allege that this amount is an "uninsured third party [sic] damage claim that, pursuant to the terms of the JOA, 'shall be the joint expense of [AIX and NextEra]'" and the St. Paul policies "provide coverage for instances in which a non-operator (NextEra) has assumed liability as operating expenses under a joint operating agreement." Record Document 1 at 7.

On December 12, 2018, Plaintiffs filed the instant suit alleging that they only agreed to limit their recovery in the AIX suit because St. Paul failed to produce the JOA which would have alerted them to the existence of another solvent and potentially liable entity. Record Documents 1 at 7 and 32 at 6. They claim that St. Paul knowingly violated Louisiana Revised Statute § 22:1973(B)(1) by misrepresenting AIX as the owner, and not the operator, of the well in its answer to Plaintiffs' petition in the underlying suit and by failing to disclose the existence of NextEra and the JOA when that information was responsive to Plaintiffs' discovery requests. Record Document 32 at 5-6. They allege that St. Paul fraudulently induced Plaintiffs to only proceed as to the collectible insurance of AIX and that St. Paul caused them to detrimentally rely on its fraudulent pleadings. Record Document 32 at 6. Plaintiffs state that this caused them damages in the amount of their unrecoverable verdict that would have otherwise "been collectible against St. Paul's financially solvent insured under the contract that was concealed by St. Paul." *Id.* Further, they state that they were deprived of the "opportunity to conduct discovery regarding the insurance policies of NextEra," which may have provided additional coverage for Plaintiffs' excess verdict. *Id.*

St. Paul filed the instant motion to dismiss arguing that Plaintiffs have failed to state a fraudulent inducement or detrimental reliance claim, that Plaintiffs' tort and § 1973 claims are prescribed, that St. Paul's use of the same attorney as AIX does not make St. Paul liable for AIX's earlier discovery responses, that Plaintiffs' agreement to lift the stay does not prevent them from seeking recovery from NextEra, and that Plaintiffs should have sought to remedy the alleged misrepresentations in the underlying suit.[4] Record Document 37-1. Plaintiffs oppose the motion. Record Document 41.

## II. Law and Analysis

### A. Legal Standard

In order to survive a motion to dismiss brought under Rule 12(b)(6), a plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all of the factual allegations in the complaint in determining whether plaintiff has stated a plausible claim. *See Twombly*, 550 U.S. at 555; *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). However, a

---

[4] This is the second motion to dismiss filed in this case. St. Paul previously filed a motion to dismiss raising several of the aforementioned arguments in combination with other arguments that the Court determined could not be decided at that stage of the litigation because resolution would require considering evidence outside of the complaint. Record Documents 10 and 20. The Court and the parties agreed to a limited discovery period and the Court allowed St. Paul to file the instant, more limited, motion to dismiss in the interim. Record Document 36 at 2.

court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). If a complaint cannot meet this standard, it may be dismissed for failure to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678–79. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A dismissal under 12(b)(6) ends the case "at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

### B. Prescription

The Court turns first to prescription because if Plaintiffs' claims are prescribed, it is outcome determinative and the remainder of St. Paul's motion is moot. The parties in this case agree that all of Plaintiffs' claims are subject to a one-year prescriptive period. This is so because a bad faith claim brought by a third party against an insurance company pursuant to § 1973(B) is subject to the same one-year prescriptive period as all other delictual actions, like Plaintiffs' tort claims. La. Civ. Code. art. 3492; *Fils v. Starr Indem. & Liab. Co.*, 17-896 (La. App. 3 Cir. 2018); 263 So. 3d 1157, 1161. The parties disagree, however, about whether Plaintiffs' claims are prescribed.

St. Paul contends that all of Plaintiffs' claims are facially prescribed because Plaintiffs admit in their complaint that they were made aware of the alleged misrepresentation regarding NextEra and the JOA by January 18, 2017, yet they did not file the instant suit until nearly two

years later on December 12, 2018.[5] Record Document 37-1 at 15. Plaintiffs maintain that their claims are not prescribed because prescription did not begin to run until the judgment in the underlying lawsuit became final in November 2018 when the Louisiana Supreme Court denied a writ of appeal.

The party pleading prescription has the burden of showing that a plaintiff's claims have prescribed, but "once it is shown that more than a year has elapsed between the time of the tortious conduct and the filing of a tort suit, the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription." *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). This rule does not apply as simply in cases where the damages from the harm are not immediate because in those cases, "the action in damages [] is formed and begins to prescribe only when the tortious act actually produces damages and not on the day the act was committed." *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992). *See also* La. Civ. Code art. 3492 (prescription "commences to run from the day injury or damage is sustained."). "The damage suffered must at least be actual and appreciable in quality—that is, determinable and not merely speculative," but "there is no requirement that the quantum of damages be certain or that they be fully incurred, or incurred in some particular quantum, before the plaintiff has a right of action." *Harvey,* 593 So. 2d at 354. When a plaintiff suffers some but not all damages, "prescription runs from the date on which he first suffered actual and appreciable damage . . . even though he may thereafter come to a more precise

---

[5] While ordinarily prescription begins to run from the date of the alleged tortious conduct, St. Paul does not contend that prescription began to run from the date of the alleged misrepresentation(s) in this case.

realization of the damages he has already incurred or incur further damage as a result of the completed tortious act." *Id.*

In other cases, it may be that a plaintiff suffers damages from a tort before having knowledge that a tort was committed. In these instances, it is the plaintiff's burden to show that prescription was suspended under the doctrine of contra non valentem. *Terrebonne Par. Sch. Bd.*, 310 F.3d at 877. Under this doctrine, prescription does not run when "the cause of action is not known or reasonably knowable by plaintiff, even though his ignorance was not induced by defendant." *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000) (quoting *Landreneau v. Fruge*, 598 So. 2d 658, 662 (La. App. 3 Cir. 1992)). In other words, prescription does not run until the plaintiff has knowledge—actual or constructive—of the tortious conduct. *Eldredge*, 207 F.3d at 743. Thus, for the prescriptive period to run in this case, St. Paul has the burden of showing when Plaintiffs suffered actual and appreciable damages and, should the Court conclude that damages occurred prior to their discovery of St. Paul's alleged tortious conduct, Plaintiffs have the burden of showing that they lacked the requisite knowledge at the time damages occurred.

The parties in this case devoted most of their attention to the first issue, that is, disputing the characterization of Plaintiffs' damages and when the damages first appreciated. St. Paul analogizes the instant case to *Harvey v. Dixie Graphics, Inc.* where the Louisiana Supreme Court was tasked with determining when prescription began to run in a case involving an accounting firm's malpractice. *Harvey*, 593 So. 2d at 352. In *Harvey*, the plaintiff sold his business to Dixie Graphics, Inc., repurchased it from Dixie Graphics, Inc., and then resold it to a third company with warranty. *Id.* at 353. In July 1984, the plaintiff learned that the Internal

Revenue Service ("IRS") was auditing the taxes filed by Dixie Graphics, Inc. when it owned the company and that he may be liable for any increase in the taxes due to the warranty he made as part of the sale to the third company. *Id.* The plaintiff's accountant and attorney met with the IRS in November 1984. *Id.* In December 1986, the plaintiff reached a settlement in which he paid a portion of the alleged excess tax liability, interest on that amount, and his own legal and accounting fees. *Id.* In June 1987, the plaintiff filed suit against the accounting firm that prepared the audited tax return. *Id.* Faced with these facts, the Louisiana Supreme Court rejected the argument that the claims did not begin to prescribe until the plaintiff paid money to the IRS. *Id.* at 354-55. The court instead concluded that the plaintiff's malpractice claim began to prescribe by November 1984 because by this time the plaintiff knew of the accountant's malpractice and he had sustained appreciable harm in the form of "substantial accountant's and attorney's fees in investigating and informing himself of the deficiencies of the return" at issue. *Id.* at 355.

Relying on this logic, St. Paul argues that Plaintiffs' complaint alleges at least two elements of damages that were sustained prior to when Plaintiffs discovered the alleged misrepresentation, thus meaning that prescription began to run from the day Plaintiffs had knowledge of the alleged misrepresentation. Record Documents 37-1 at 16 and 46 at 3-4. First, it says that Plaintiffs allege that the misrepresentation induced them to enter into the bankruptcy agreement to proceed only against AIX's collectible insurance, thereby surrendering their right to pursue recovery from NextEra. Record Document 37-1 at 16. Second, it contends that Plaintiffs allege that they were deprived of the opportunity to conduct discovery regarding NextEra and its insurance policies during the AIX suit. *Id.* St. Paul also

11

argues that because the instant suit is premised on the proposition that Plaintiffs would have had the right to pursue recovery from NextEra but for St. Paul's alleged misrepresentations, Plaintiffs suffered damages in the form of the loss of the right to name NextEra as a defendant in the underlying suit. *Id.* at 16-17. St. Paul does not contend that Plaintiffs allege this harm explicitly in their complaint. *Id.* St. Paul argues that when one party "tortiously causes another party to lose a litigious right . . . or to forego a right it possesses (such as to acquire information in support of its effort to recover from others)," the release of rights itself constitutes actionable damages. *Id.* at 17. Therefore, St. Paul concludes that when Plaintiffs learned of the misrepresentation on January 18, 2017, prescription began to run immediately, and Plaintiffs had one year from that date to file suit.

Plaintiffs deny that their complaint alleges damages independent from the unrecovered judgment in the underlying suit. Record Document 41 at 12. They contend that St. Paul's argument regarding damages that they suffered prior to discovering the alleged misrepresentation conflates their allegations of tortious conduct with an allegation of damages. *Id.* Plaintiffs also dispute that their right to sue NextEra constitutes actionable damages that are independent of the outcome of the underlying litigation. *Id.* They argue that because NextEra contractually assumed a percentage of AIX's tort liability, the right to sue NextEra would be worthless if AIX was successful on appeal and found to have no tort liability. *Id.*

As to the second issue, when Plaintiffs had knowledge of the tortious conduct, Plaintiffs dispute St. Paul's conclusion that prescription began to run on January 18, 2017. *Id.* at 14. According to Plaintiffs, they did not see the JOA which showed NextEra's full

contractual relationship with AIX until March 6, 2017 and hence, they argue that they lacked knowledge of the contractual relation between AIX and NextEra before that date. *Id.*

It is unnecessary for the Court to resolve the factual dispute regarding knowledge to decide this motion because both of these dates are more than one year before Plaintiffs filed the instant suit. Therefore, taking the facts as plead in the most favorable light to Plaintiffs, the Court assumes that Plaintiffs had knowledge of the tortious acts no later than March 6, 2017 when they received the JOA and had both knowledge of Next Era's existence and knowledge that NextEra had assumed AIX's tort liability. Thus, March 6, 2017 is the date that Plaintiffs were aware that they may have a cause of action against St. Paul for allegedly concealing the existence of a finically solvent company which had assumed some portion of AIX's tort liability in the underlying lawsuit. As long as Plaintiffs had also suffered damages by this date, March 6, 2017 is the day that prescription began to run.

The Court concludes that Plaintiffs had suffered actual and appreciable damages by March 6, 2017. For example, they had lost the ability to name NextEra as a defendant in the underlying litigation and the right to pursue discovery regarding the JOA in the underlying litigation.[6] These damages were independent of any additional damages Plaintiffs could eventually quantify with certainty upon successfully defending their jury verdict on appeal and

---

[6] While Plaintiffs claim in their complaint that the bankruptcy court agreement precluded them from pursuing NextEra in any manner, this is a legal conclusion that the Court is not obligated to accept as true. That said, the Court expresses no opinion as to whether the language in the bankruptcy agreement actually precludes Plaintiffs from suing NextEra and St. Paul as NextEra's insurer except to say that the language used in the bankruptcy agreement is typical in bankruptcy where a plaintiff is seeking to pursue his or her claim against a bankrupt defendant's insurer when the bankrupt defendant's bankruptcy proceeding has resulted in a stay of the plaintiff's litigation.

13

were thus actual and appreciable at the time Plaintiffs discovered the misrepresentation and saw the JOA.

Certainly, the amount of the jury verdict as upheld on appeal in excess of the AIX insurance proceeds would be evidence of the amount of the damages to which Plaintiffs would be entitled if successful in their claim in this suit. As discussed above, however, this excess amount is not an excess judgment as Plaintiffs contend, but an excess jury verdict. Hence, the cases cited by Plaintiffs which hold that a bad faith claim under Louisiana Revised Statute § 22:1973(A) does not begin to prescribe until after a suspensive appeal has concluded are inapplicable to the instant situation. In those cases, the courts explained that the harm to the plaintiff in a bad faith failure to settle claim is the excess judgment which the plaintiff is liable to pay. *Smith v. Citadel Ins. Co.*, 19-00052 (La. 2019); 285 So. 2d 1062, 1066; *Belanger v. Geico General Ins. Co.*, 623 F. App'x 684, 688 (5th Cir. 2015); *Mathies v. Blanchard*, 06-0559 (La. App. 1 Cir. 2007); 959 So. 2d 986, 988-89. Because the excess judgment is not enforceable against the insured while a suspensive appeal is pending, the insured has not suffered damages until the suspensive appeal ends and the judgment becomes enforceable, thus meaning the insured becomes liable for the judgment. *See Belanger*, 623 F. App'x at 689 (holding that prescription on a bad faith claim ran during the appeal process because the appeal was devolutive and not suspensive). In contrast, whether the appeal was suspensive or devolutive is insignificant to this case because the harm to Plaintiffs was not that they were exposed to an excess judgment or that they would possibly have an enforceable excess judgment after a suspensive appeal, but rather that they lost the ability to execute on the full amount of the jury's verdict. This loss became actual and appreciable at the time the trial court entered its judgment and would exist

regardless of the outcome of any appeal, though the amount of damages could have been affected by the appeal.

In sum, like in *Harvey*, Plaintiffs began suffering damages before being certain about what the largest portion of their damages would be, but those initial damages were actual and appreciable such that prescription began to run. This holding is also in line with cases examining prescription of a claim involving litigation-related harms. For example, in *VSE Corporation v. Koretzky*, the plaintiff hired a lawyer to draft a collective bargaining agreement and the lawyer's agreement allegedly violated the Fair Labor Standards Act ("FLSA"), eventually causing the plaintiff to be sued for those violations. *VSE Corp. v. Koretzky*, No. CV 19-10827, 2019 WL 7041855, at *1 (E.D. La. Dec. 20, 2019). The plaintiff received notice of the suit on April 23, 2018 and on May 30, 2019, the plaintiff filed a malpractice suit against the lawyer who drafted the agreement. *Id.* When the lawyer argued that the plaintiff's claims were prescribed, the plaintiff argued in part that prescription did not begin to run until the FLSA suit ended because the plaintiff suffered no damages until it had an unfavorable outcome in the FLSA suit. *Id.* at *5. The court rejected this argument, finding that prescription began when the plaintiff was served in the Texas suit because it was at this time that the plaintiff had knowledge of the malpractice and the plaintiff first began suffering damages—in that case attorney's fees and costs related to the Texas suit. *Id.* Like in *VSE Corporation*, the value of the jury verdict in excess of what Plaintiffs were able to recover in the underlying suit would be evidence of Plaintiffs' damages in this case, but that does not negate the fact that Plaintiffs had already suffered damages by the time they had knowledge of St. Paul's alleged

misrepresentation. This means prescription began to run by the date when they gained knowledge of St. Paul's alleged misconduct and its effect in the underlying suit.

Finally, the Court notes that for Plaintiffs' § 1973(B) claim, they were immediately eligible to file suit for the alleged misrepresentation upon discovering the misrepresentation. *Sultana Corp. v. Jewelers Mut. Ins. Co.*, 03-0360 (La. 12/3/03), 860 So. 2d 1112, 1119 (holding that a plaintiff can be awarded penalties under § 1973(B) without proving damages). This further supports the Court's conclusion that prescription began to run by March 6, 2017. Because prescription began to run by March 6, 2017 and Plaintiffs did not file suit until over one year later on December 12, 2018, their claims are prescribed.

### III. Conclusion

Because Plaintiffs' claims are prescribed, Defendant's motion to dismiss [Record Document 37] is **GRANTED** and Plaintiffs' claims are **DISMISSED with prejudice**. A judgment stating the same will issue herewith.

**THUS DONE AND SIGNED** this 16th day of March, 2021.

_____
ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE